UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK TIMES,<br><br>      Plaintiff,<br><br>  -v-<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>      Defendants. | 22-cv-1539 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

This case involves two requests under the Freedom of Information Act ("FOIA") filed with the Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") by the New York Times (the "Times") and one of its national security reporters, Mark Mazzetti. The FOIA requests sought information about the DOJ and FBI's use of spyware and other digital surveillance products from the Israeli technology company NSO Group, including its flagship product "Pegasus," which is used to surveil encrypted communications on smartphones. The parties previously cross-moved for summary judgment. The Court granted in part and denied in part the respective motions in a Memorandum Order dated July 7, 2023 (the "July 7 Order"). *See New York Times v. United States Dep't of Just.*, 2023 WL 4407480 (S.D.N.Y. July 7, 2023). The Government has filed this motion for partial reconsideration of that decision concerning two categories of documents. *See* Dkt. 32.

I. **Legal Standard**

A motion for reconsideration should generally be granted "only

1

when the defendant identifies [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and internal citation omitted). The movant generally must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## II. Discussion

### A. Group G: Revised Vaughn Index 33-34

These documents consist of a draft and final letter from the FBI to Israel's Defense Export Control Agency. The Government redacted portions of these documents to remove the identity of the vendors involved in the potential acquisition of an NSO tool, as well as "other details about how the product was acquired" on the basis of Exemption 7(E). Third Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 4.

Exemption 7(E) applies to materials that would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This Exemption "sets a relatively low bar," *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011), and "does not have to prove that circumvention is a necessary result," but only that disclosure of the

2

information "could reasonably be expected to" increase the risk of circumvention of the law, *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). *See* July 7 Order, at *4, 18-19 (applying exemption to other categories of documents where disclosure "could reveal information about the FBI's actual and expected capabilities").

To establish that Exemption 7(e) applied, the Government's prior declaration, submitted in support of its motion for summary judgment, simply stated that disclosure of the redacted information would reveal "the specifics of FBI programs, technology capabilities (and means for acquisition of technology), and relationships with foreign partners," without any further explanation. Declaration of Joseph E Bender, Jr. ("Bender Decl.") ¶ 52. The Court's July 7 Order granted plaintiffs' motion for summary judgment as to these documents, finding that the "Government fail[ed] to give any information showing why or how information in the letter to Israel about the NSO technology would reveal anything about law enforcement techniques or investigations, nor does it explain why 'potential issues related to relationships with foreign countries' qualifies for withholding under Exemption 7(E)." July 7 Order, at *17.

In support of its motion for reconsideration, the Government has submitted a supplemental declaration explaining in greater detail the reasons why the FBI believes Exemption 7(E) applies. The new declaration states that disclosure of acquisition information and vendor details would risk circumvention of the law in three ways:

First, disclosure would allow potential targets of

3

>investigation to hone in on the possible technologies used by the FBI and create countermeasures for such technologies. Second, revealing the specific vendors could harm the vendors, by exposing them as targets for foreign adversaries, or for hostile non-state actors, such as hacktivist groups who oppose the FBI's use of surveillance technology, even when legally authorized. Such actions not only damage particular vendors, but also may make other vendors reluctant to do business with the FBI. These potential harms to technology vendors diminish the FBI's ability to acquire commercial software for law enforcement use. Third, criminals and adversaries may also use this information to target the vendors and technology with malware to penetrate FBI information systems during a technology transfer.

Seidel Decl. ¶ 5. The Government also, for the first time, claims that the redacted information is protected under FOIA Exemption 1 and 3 (on national security/foreign policy grounds).

Had the government included this level of factual detail in its initial motion, it clearly would have been sufficient to sustain application of Exemption 7(E). The Government is entitled to deference in its judgments about national security, foreign relations and whether disclosure of information will risk circumvention of the law. *See ACLU v. DoD*, 901 F.3d 125, 134 (2d Cir. 2018); *Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 485 F. Supp. 3d 100, 111 (D.D.C. 2020). The Government need only provide "sufficient information to evaluate whether those judgments were logical and plausible." *ACLU*, 901 F.3d at 134. The above explanation, as well as those outlined in the classified declaration provided for the Court's *in camera* review, are more than sufficient to meet this standard.

Plaintiffs argue the names of these vendors, and information about how the FBI acquires software, are not "techniques or procedures"

4

within the meaning of Exemption 7(E). *See* Defs.' Br. at 5. But this takes too cramped a view of the meaning of "techniques." The Second Circuit has indicated the term "technique" encompasses "a technical method of accomplishing a desired aim." *Allard K. Lowenstein Intl. Human Rights Project v DHS*, 626 F.3d 678, 682 (2d Cir. 2010) (quoting Webster's Third New International Dictionary (1986)). The software used to investigate crimes fits comfortably within this definition. *See, e.g.*, *Sheridan v. U.S. Off. of Pers. Mgmt.*, 278 F. Supp. 3d 11, 21 (D.D.C. 2017) (Jackson, J.) (holding software's source code and related documents were covered by Exemption 7(E)); *Anand v. U.S. Dep't of Health & Hum. Servs.*, 2023 WL 2646815, at *23 (D.D.C. Mar. 27, 2023) (holding that the "types of software used to examine digital media" fell within Exemption 7(E)).

Notwithstanding the sufficiency of the Government's supplemental declaration, the question remains whether the Government has demonstrated that reconsideration is warranted. The Government does not argue there has been any "intervening change of controlling law" or that it has discovered any "new evidence" not available at the time of their prior motion, but instead appears to argue that reconsideration is necessary to prevent "manifest injustice." *Kolel*, 729 F.3d at 104.

"While the courts have not defined 'manifest injustice,'" one circumstance courts have found "fall[s] beneath [this] umbrella" is where "injury to innocent third parties" would result from disclosure of the information. *Delta Ltd. v. U.S. Customs & Border Prot. Bureau*,

5

393 F. Supp. 2d 15, 17 (D.D.C. 2005). The same logic applies where disclosure of the information would harm law enforcement efforts or endanger national security. In such circumstances, "technical rules of judicial convenience" should be relaxed in the face of broader national interests. *ACLU v. DOD*, 2017 U.S. Dist. LEXIS 232951, at *3 (S.D.N.Y. Nov. 13, 2017). Doing so is consistent with the broader deference courts are instructed to show to law enforcement and national security officials in the FOIA context. *See ACLU*, 901 F.3d at 134; *Am. Immigr. Laws. Ass'n*, 485 F. Supp. 3d at 111.

Applying these principles, the Court concludes that reconsideration is appropriate. As noted, the Government has put forward sufficient evidence that disclosure of this information would present risks to law enforcement efforts and national security. But in reaching this conclusion, the Court makes clear that this ruling should in no way be construed as approving the Government's failure to effectively support its litigation positions in its summary judgment briefing. In the ordinary case, the Government remains constrained by the same rules of procedure as every other litigant and reconsideration would plainly be inappropriate. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' —- and we in no way depart from that basic principle."). Only in light of the broader interests at stake, the deference owed to the Government under FOIA, and the fact that this

6

is only the first time the Government has attempted to correct this deficiency is the Court willing to grant reconsideration.

### B. Group L: Revised Vaughn Index 49

This is a single email chain that pre-dates the decision not to deploy the NSO technology. The Government withheld this email chain in its entirety under Exemption 5 (deliberative process privilege). The July 7 Order agreed that "actual 'intermediate approvals' by particular individuals or offices that were made prior to the ultimate decision not to proceed" fell within the Exemption. July 7 Order, at *20. However, the Order explained that "descriptions of 'the specific decision-making process' -- as opposed to the views actually expressed during that process -- [would not be] covered by Exemption 5." *Id.* (citing *United States Fish and Wildlife Service v. Sierra Club*, 141 S. Ct. 777, 785 (2021)). The Order directed the Government to "produce any portions of [this email chain] describing 'the specific decision-making process'" or, if the Government concluded no portion could be segregated, to submit the email chain for *in camera* review. *Id.*

The Government has submitted the email chain for the Court's review and urges that the entire document should be withheld because the protected portions of the document are not segregable. Having reviewed the email chain, the Court agrees that the entire document is protected. The email chain contains no substantive information that can be practically segregated from the actual intermediate approvals concerning whether to deploy the NSO technology.

7

## III. Conclusion

For the reasons described above, the Government's motion for partial reconsideration, Dkt. 32, is hereby granted.

Plaintiffs also requests that the deadline to file any motion for attorney's fees be extended until after all appeals have been exhausted, so that plaintiffs may file one, consolidated fee application. *See* Dkt. 35, at 6-7. That motion is hereby granted. The parties are directed to jointly call in to chambers within 14 days of the exhaustion of all rights of appeal to set a briefing schedule for any such fees motion.

SO ORDERED.

New York, NY
November 6, 2023

_____
JED S. RAKOFF, U.S.D.J.